**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| Kenyatta Brown (K-79185), | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.  18 C 7944 |
| v. | ) | |
| | ) | Hon. Marvin E. Aspen |
| Randy Pfister, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

In this *pro se* civil rights lawsuit brought pursuant to 42 U.S.C. § 1983, Plaintiff Kenyatta Brown alleges he was subjected to unconstitutional conditions of confinement while housed in a cell in Stateville Correctional Center's health care unit. Before the Court is Defendant Randy Pfister's motion for summary judgment, to which Plaintiff has responded.  For the reasons discussed below, the Court grants Defendant's motion.

**I.  Summary Judgement Standard**

Pursuant to Federal Rule of Civil Procedure 56(a), a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986), or by "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material facts exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at

1

248). A fact is material if it might affect the outcome of the suit. *First Ind. Bank v. Baker*, 957 F.2d 506, 508 (7th Cir. 1992).

The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the party moving for summary judgment demonstrates the absence of a disputed issue of material fact, "the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *Carrol v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). The non-movant must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Hannemann v. Southern Door Cty Sch. Dist.*, 673 F.3d 746, 751 (7th Cir. 2012).

The Court's role is "to determine whether there is a genuine issue for trial," *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (citations and quotations marks omitted), without "weigh[ing] evidence, mak[ing] credibility determinations, resolv[ing] factual disputes and swearing contests, or decid[ing] which inferences to draw from the facts." *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). Thus, in making that determination, the Court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

## II. Northern District of Illinois Local Rule 56.1

Local Rule 56.1 governs the procedures for filing and responding to motions for summary judgment in this Court. The rule is intended "to aid the district court, 'which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information,' in determining whether a trial is necessary." *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011) (citation omitted.)

2

Local Rule 56.1(a) requires the moving party to provide "a statement of material facts" as to which the moving party contends there is no genuine issue for trial. LR 56.1(a); Fed. R. Civ. P. 56(1). The opposing party must then "file a response to each numbered paragraph in the moving party's statement" of fact. *Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005) (internal quotation marks omitted); LR 56.1(b), (e). In the case of any disagreement, the opposing party must reference "specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact." LR 56.1(e)(3). "[M]ere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material." *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003). "All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." *Id*. The nonmoving party may also present a separate statement of additional facts that require the denial of summary judgment that consists of "concise numbered paragraphs" "supported by citation to the specific evidentiary material, including the specific page number, that supports it." LR 56.1(b)(3), (d).

In this case, Defendant filed a LR 56.1 statement of material facts and memorandum of law with his motion for summary judgment. (Dkts. 79, 80.) Consistent with the local rules, Defendant also provided Plaintiff with a LR 56.2 Notice, which explains what LR 56.1 requires of a litigant opposing summary judgment. (Dkt. 81.)

For his part, Plaintiff submitted a 56-page document, which is comprised of an argument section, a statement of additional facts that Plaintiff contends are relevant to this case, and a short response to Defendant's statement of facts. (Dkt. 93.) Plaintiff appends various exhibits to his

3

responsive pleading, including his own declaration.[1] (*Id.* at pgs. 10-52.)

Even generously construed, Plaintiff's submissions cannot be deemed an appropriate response to Defendant's statement of material facts.

Although courts construe *pro se* pleadings liberally, *see Thomas v. Williams*, 822 F.3d 378, 385 (7th Cir. 2016), a plaintiff's *pro se* status does not excuse him from complying with federal and local procedural rules. *See McNeil v. United States*, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Collins v. Illinois*, 554 F.3d 693, 697 (7th Cir. 2009) ("[E]ven *pro se* litigants must follow procedural rules."). Local Rule 56.1 "provides the only acceptable means of disputing the other party's facts and of presenting additional facts to the district court." *Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1317 (7th Cir. 1995); *see also Cichon v. Exelon Generation Co.*, 401 F.3d 803, 809-10 (7th Cir. 2005).

Under LR 56.1, Plaintiff was required to respond to each numbered statement of fact by admitting the fact, disputing it, or admitting it in part and disputing it in part. LR 56.1(e)(2). Plaintiff failed to do so here, as he responded to (disputed) just three of Defendant's statement of facts, and did so without citing to any evidence in the record. (*See* Dkt. 93 at pgs. 55-56.)

Because Plaintiff did not properly respond to Defendant's LR 56.1 statement of facts, the Court accepts Defendant's "uncontroverted version of the facts to the extent that it is supported by evidence in the record." *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880 (7th Cir. 2012).

Additionally, as Defendant points out, Plaintiff's statement of additional facts is similarly problematic. Some of the statements are unaccompanied by any citation to the record at all (*see*

---

[1] The Court notes that Plaintiff's original declaration was not signed (*see* Dkt. 93 at pgs. 16-20), and he was subsequently granted permission to supplement the record to include his signed declaration (*see* Dkts. 94, 95, 98).

*e.g.,* Dkt. 93 at pg. 53 at ¶ 6), or, where Plaintiff has provided a citation, are unsupported by the cited material (*see e.g., id.* at ¶ 7). Plaintiff's statements also contain unsupported speculation (*see e.g., id.* at ¶ 3), as well as disputes about discovery matters (*see e.g., id.* at ¶ 8) and disputes concerning the scope of this lawsuit (*see e.g., id.* at ¶ 12).[2] Again, LR 56.1 requires "each asserted fact" to be "supported by citation to the specific evidentiary material, including the specific page number, that supports it. The court may disregard any asserted fact that is not supported with such a citation." LR 56.1(d)(2). Plaintiff's statement of additional facts runs afoul of this rule. Therefore, the Court has considered Plaintiff's statement of additional facts only to the extent it is supported by the record or where Plaintiff could properly testify about the matters asserted. *See Sistrunk v. Khan*, 931 F. Supp. 2d 849, 854 (N.D. Ill. 2013); *see also* Fed. R. Evid. 602.

With these guidelines in mind, the Court turns to the facts of this case, stating those facts as favorably to Plaintiff as the record and LR 56.1 permit. *See Hanners v. Trent*, 674 F.3d 683, 691 (7th Cir. 2012).

---

[2]     As discussed in more detail below, Plaintiff's original and amended complaints complained were dismissed without prejudice because they contained misjoined claims and Defendants. (*See* Dkts. 8, 12.) The Court accepted Plaintiff's second amended complaint only after Plaintiff narrowed down his allegations, focusing on an alleged bug "infestation" in a particular cell in Stateville's health care unit. (*See* Dkt. 21, August 5, 2019 screening order.) In his second amended complaint, Plaintiff alleged that on June 6, 2017, he discovered a roach in his ear (for which he sought and received medical attention). (*See id.* at pgs. 2-4, summarizing Plaintiff's allegations.) Based on these allegations, the Court permitted Plaintiff to proceed upon an Eighth Amendment conditions claim (against Warden Pfister who allegedly knew about the conditions in his cell but failed to take steps to remedy the problem). (*Id.* at pgs. 4-5.) All other claims and Defendants were dismissed. (*Id.* at pgs. 5-6.) In his response to the pending summary judgment motion, Plaintiff now challenges certain discovery matters (concerning grievance documentation) and the scope of this lawsuit. In connection therewith, Plaintiff asks the Court to review grievance documentation from July 2017 (complaining about various unfavorable living conditions in a cell in the health care unit), December 2017 (complaining about roaches in a food tray on December 18, 2017), and April 2018 (complaining about roaches in a food tray on April 13, 2018). (*See* Dkt. 93 at pgs. 22-31.) The Court will not do so. As noted above, this lawsuit involves the roach problem in a particular cell in the health care unit (which allegedly resulted in a bug in Plaintiff's ear on June 6, 2017). The grievance documentation (from July 2017, December 2017, and April 2018) is outside the timeframe applicable to this case and does not pertain to the roach issue in Plaintiff's particular cell that resulted in the June 6, 2017 discovery of a roach in his ear.

**III. Background**

**A.      Procedural History**

Plaintiff initiated this lawsuit in December 2018, challenging various aspects of his incarceration at Stateville. (Dkt. 1, Plaintiff's original complaint at pgs. 7-24.) By order dated February 13, 2019, the Court dismissed Plaintiff's complaint because it contained misjoined claims and Defendants, and gave Plaintiff an opportunity to submit an amended complaint. (Dkt. 8, February 13, 2019 screening order at pgs. 3-4.) Plaintiff's amended complaint was dismissed for the same reason, and Plaintiff was given an opportunity to submit a second amended complaint that was limited to properly joined claims and Defendants. (Dkt. 12, March 19, 2019 screening order at pgs. 2-3.) In his second amended complaint, Plaintiff alleged that he was confined to a cell in Stateville's health care unit that was "infested" with roaches. (*See* Dkt. 15, Plaintiff's second amended complaint at pgs. 6-7.) Plaintiff alleged that on June 6, 2017, he discovered a roach in his ear (for which he sought and received medical attention). (*Id.*) Plaintiff claimed that Defendant Warden Randy Pfister was aware of the roach problem in his cell, but failed to take reasonable steps to remedy it. (*Id.* at pgs. 6, 9.) Based on these allegations, the Court permitted Plaintiff to proceed upon an Eighth Amendment conditions of confinement claim against Defendant Pfister. (Dkt. 21, August 5, 2019 screening order at pg. 5.) All other claims and Defendants were dismissed. (*Id.* at pgs. 5-7.)

**B.      Relevant Facts**

Plaintiff, Kenyatta Brown, is an individual currently in the custody of the Illinois Department of Corrections (IDOC) and was housed at Stateville from February 2011 to January 2020. (Dkt. 79, Defendant's Statement of Facts ("DSOF"), ¶ 1.) Defendant Randy Pfister was

6

Warden at Stateville from November 12, 2015 to January 31, 2018, and then August 1, 2019 to January 31, 2020 (*Id.*, ¶ 2.)

Plaintiff was housed in Cell 158 on June 6, 2017, in the health care unit (HCU), for a period of no more than 90 days, which is separate from his cell in the general cellhouses. (*Id.*, ¶ 5.) Plaintiff filed a grievance marked as an emergency regarding the incident on June 12, 2017. (*Id.*, ¶ 6.) Defendant Pfister's designee marked the grievance as a non-emergency and instructed Plaintiff to file the grievance with his counselor in accordance with normal grievance procedure. (*Id.*, ¶ 7.) Plaintiff sent the grievance directly to the Administrative Review Board (ARB) after receiving it back from the warden's office. (*Id.*, ¶ 8.) The ARB returned the grievance to Plaintiff, requiring additional information. (*Id.*, ¶ 9.) Plaintiff did not send the grievance back to his counselor and did not continue through the standard grievance procedure, as he testified that he considered the process exhausted. (*Id.*, ¶ 10.) Plaintiff did not file any grievances regarding an infestation prior to June 6, 2017. (*Id.*, ¶ 11.) Plaintiff verbally complained to correctional officers and medical personnel regarding allegations of an infestation. (*Id.*, ¶ 12.) Plaintiff is familiar with the grievance process, and has filed dozens of grievances before. (*Id.*, ¶ 13.)

The grievance procedure begins with an individual in custody attempting to resolve it through their counselor. (*Id.*, ¶ 14.) If the grieved issue remains unresolved after informal efforts, the individual in custody may submit a written grievance on a grievance form to the facility grievance officer. (*Id.*) The grievance officer may personally interview the individual in custody and/or other witnesses as deemed appropriate and obtain relevant documents to determine the merits of the grievance. (*Id.*) Upon completion of such investigation by the grievance officer, their report and recommendation is forwarded to the warden for decision. (*Id.*) The decision of

7

the warden's office is then submitted to the grieving individual in custody. (*Id.*) If, after receiving the warden office's decision, the individual in custody feels the issue is not resolved, he may appeal in writing to the Director of the IDOC by submitting the grievance officer's report and warden's decision to the ARB. (*Id.*) After the director or his designee reviews the ARB's recommendation, he will make a decision and send it back to the individual in custody, marking the final step in the administrative review process. (*Id.*)

Alternatively, a grievance can be marked as an emergency, which then will go straight to the warden's office. (*Id.*, ¶ 16.) When a grievance is marked as an emergency, the grievance will go directly to the warden's office. (*Id.*) The grievance will only be reviewed to determine if there is a substantial risk of imminent personal injury, sexual abuse, or other serious or irreparable harm to self, pursuant to Administrative Directive 04.01.1.114. (*Id.*) The grievance form also explains the same. (*Id.*) If it is determined that it is not an emergency, the grievance will be sent back to the individual in custody, so that he can go through the normal channels of the grievance process. (*Id.*)

Pursuant to the Illinois Administrative Code § 504.870, certain issues may be addressed directly to the ARB. Such issues are limited to: (a) decisions involving the involuntary administration of psychotropic medication; (b) decisions regarding protective custody placement including continued placement in or release from protective custody; (c) decisions regarding disciplinary proceedings that were made at a facility other than the facility where the individual in custody is currently assigned; and (d) other issues except personal property issues that pertain to a facility other than the facility where the individual in custody is currently assigned. (*Id.*, ¶ 17.)

Plaintiff did not have personal conversations with Defendant Pfister regarding roaches in

8

his health care unit cell. (*Id.*, ¶ 18.) Plaintiff did not send Defendant Pfister any written correspondence regarding the same. (*Id.*)

Defendant Pfister did not review Plaintiff's June 12, 2017 grievance; a designee reviewed the grievance, which is evident by the fact that there are circled initials next to Defendant Pfister's signature. (*Id.*, ¶ 19.)

IDOC contracted with a pest control company, Critter Ridder, Inc., prior to Defendant Pfister's employment as warden of Stateville. (*Id.*, ¶ 20.) Critter Ridder, Inc. made regular visits to Stateville multiple times a month to spray different areas of the facility. (*Id.*, ¶ 21.) Specifically, for a year prior to Plaintiff's incident in June 2017, the healthcare unit was sprayed at least once a month (sometimes more). (*Id.*) In particular, the healthcare unit was sprayed on July 17, 2016, August 18, 2016, September 22, 2016, October 20, 2016, November 17, 2016, December 19, 2016, January 19, 2017, February 20, 2017, March 23, 2017, April 6, 2017, April 13, 2017, April 20, 2017, May 18, 2017, May 22, 2017, June 22, 2017, and July 20, 2017. (*Id.*, ¶ 22.)

## IV. Analysis

Given the above facts, Defendant moves for summary judgment on various grounds. Specifically, Defendant argues that: Plaintiff failed to exhaust his administrative remedies with respect to his conditions claim; Plaintiff's condition claim fails on the merits; and, he is entitled to qualified immunity. (Dkt. 80, Defendant's Memorandum of Law in Support of Summary Judgment at pgs. 4-5.)

With respect to the first issue (exhaustion), the Prison Litigation Reform Act ("PLRA") requires an inmate to exhaust available administrative remedies by following to completion the procedural rules for grievances within a correctional institution. *See Woodford v. Ngo*, 548 U.S.

9

81, 90 (2006); *Ford v. Jimenez*, 362 F.3d 395, 397 (7th Cir. 2004). Exhaustion of available administrative remedies "'means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).'" *Woodford*, 548 U.S. at 90 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). Proper use of the prison grievance system requires a prisoner "to file complaints and appeals in the place, and at the time the prison's administrative rules require." *Pozo*, 286 F.3d at 1025; *see also Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). The burden of proof is on the defendant to demonstrate the prisoner failed to exhaust his administrative remedies. *See Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013).

Here, Defendant argues that Plaintiff failed to follow the proper grievance procedure with respect to his June 12, 2017 grievance and thus has not exhausted his administrative remedies with respect to his conditions claim. (Dkt. 80, Defendant's Memorandum of Law at pgs. 4-5.) The Court agrees.

The undisputed facts establish that Plaintiff filed an emergency grievance on June 12, 2017 complaining about the incident that occurred on June 6, 2017 when he woke up and discovered a bug in his ear. (Dkt. 79, DSOF, ¶ 6.) Defendant Pfister's designee determined that the grievance was not an emergency, and sent it back to Plaintiff with a specific instruction that "[o]ffender should submit this grievance in the normal manner." (*Id.*, ¶ 7.) Plaintiff did not do so. Instead, he submitted the grievance to the ARB. (Dkt. 79, DSOF, ¶ 8.) The ARB returned the grievance, with the following note, which indicated that "additional information" was "required":

> The attached grievance or correspondence is being returned for the following reasons:
>
> Provide your original written Offender's Grievance, DOC 0046, including the counselor's response, if applicable.

> Provide a copy of the Response to Offender's Grievance, DOC 0047, including the Grievance Officer's and Chief Administrative Officer's response, to appeal: if timely.

(Dkt. 79-3, ARB Return of Grievance or Correspondence form.) Plaintiff testified that he did not follow the instructions on this particular form because he "considered it exhausted." (Dkt. 79-1, Plaintiff's Deposition Testimony at 23:15.) Plaintiff's failure to properly follow each step of the prison's administrative review process renders his claim unexhausted. *See, e.g., Saffold v. Illinois Department of Corrections, et al.*, No. 18 C 3301, 2021 WL 4477930, at *9 (N.D. Ill. Sept. 30, 2021) (Kendall, J.) (granting summary judgment for Defendants as to Plaintiff's emergency grievance where Plaintiff did not comply with the facility's express order to refile his grievance with supplemental information); *Edens v. O'Brien*, No. 14-cv-50056, 2016 WL 4191756, at *9–12 (N.D. Ill. Aug. 9, 2016) (Reinhard, J.) (granting summary judgment for IDOC where "plaintiff overtly disregarded the agency's procedures by failing to respond to the ARB's explicit instructions" to provide additional information, and collecting cases); *see also Curry v. Butler*, No. 17-cv-751, 2018 WL 3216862, at *3 (S.D. Ill. July 2, 2018) (Herndon, J.) (a prisoner who receives written instructions to submit a grievance through the normal, non-emergency process must follow the instructions to complete the grievance process) (citing *Pozo*, 286 F.3d at 1025).

In an effort to avoid this result, Plaintiff argues that "[he] understood the grievance process to mean that all final decisions at any level of the grievance process could be appealed at the next level." (Dkt. 93, Plaintiff's Response at pg. 1.) Plaintiff explains that he personally believed his grievance was an emergency and that it was proper for him to send his returned (non-emergency grievance) directly to the ARB. (*Id.* at pg. 2.) Plaintiff also asserts that once he received the

11

response from the ARB, he was "confused at the direction or lack thereof[.]" (*Id.*) Plaintiff's arguments are not persuasive.

Initially, Plaintiff does not point to any administrative authority that suggests that it was proper for him to send his returned (non-emergency) grievance to the ARB, nor does he contend that the complained-of conditions in his cell (an alleged roach infestation that resulted in a "bug" in his ear) were the type of issues that could be addressed directly to the ARB under Illinois Administrative Code § 504.870. Further, the Warden's designee explicitly and unequivocally instructed Plaintiff to re-file his grievance through the normal channels *and* the ARB instructed Plaintiff to provide additional information in order to proceed further with the matter. To the extent Plaintiff chose to disregard the written instructions on the two returned forms and simply rely on his own personal beliefs or opinions about the grievance process, his failure to follow proper procedures is not excused. *Twitty v. McCoskey*, 226 F.App'x 594, 596 (7th Cir. 2007) (holding that a prisoner's alleged lack of knowledge of grievance procedures does not excuse noncompliance with available administrative remedies). The PLRA "says nothing about a prisoner's subjective beliefs, logical or otherwise, about administrative remedies that might be available to him." *Id.* Here, Plaintiff bore the responsibility of taking the appropriate steps to comply with the prison's grievance procedures, and he failed to do so.

Plaintiff also contends that "even if the administrative directives mandated that [he] exhaust his administrative remedies differently than he did, no staff at the facility ever provided [him] with the rules governing the grievance process." (Dkt. 93 at pgs. 2-3.) He states that "[i]t is not the duty of the Plaintiff to seek out the rules of the facility." (*Id.*) He asserts that he never received a copy of the inmate handbook upon his arrival to Stateville, and that he learned of the

grievance process through other inmates (rather than prison staff). (*Id.* at pg. 3.) These arguments are not well-taken.

Even if, as Plaintiff says, he did not receive an inmate handbook upon his arrival to Stateville, he testified at his deposition about his familiarity with the grievance process at Stateville (and he admits now in his response that he learned about the grievance process through other inmates). (Dkt. 79-1, Plaintiff's Deposition Testimony at 16:7-24; 17:1-24; 18:1-24; 19:1-6.) Moreover, the returned forms from the Warden's designee *and* the ARB provided Plaintiff with specific instructions as to how to go about or continue pursuing his administrative remedies. Rather than following those instructions (or taking any further action whatsoever for that matter), Plaintiff simply did nothing.

Accordingly, for the reasons discussed above, the Court finds that Plaintiff failed to exhaust his administrative remedies, and this lawsuit is therefore barred by the PLRA. In light of Plaintiff's conditions claim being dismissed for failure to exhaust administrative remedies, the Court need not address Defendant's remaining arguments concerning the merits of the conditions claim.

## V. Conclusion

For the reasons stated above, the Court grants Defendant's motion for summary judgment (Dkt. 78) and dismisses Plaintiff's conditions claim without prejudice for failure to exhaust administrative remedies.[3] Final judgment shall enter.

If Plaintiff wishes to appeal, he must file a notice of appeal with this Court within thirty days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). If Plaintiff appeals, he will be liable for

---

[3]     By operation of 42 U.S.C. § 1997e(a), Plaintiff has no further recourse in federal court at this time. The dismissal therefore constitutes a final appealable order. *See Maddox*, 655 F.3d at 716 (explaining that order dismissing § 1983 claim for failure to exhaust administrative remedies is appealable where there are no further remedies that plaintiff can pursue); *Barnes v. Briley*, 420 F.3d 673, 676-77 (7th Cir. 2005) (same).

the $505.00 appellate filing fee regardless of the appeal's outcome. *See Evans v. Ill. Dep't of Corr.*, 150 F.3d 810, 812 (7th Cir. 1998). If the appeal is found to be non-meritorious, Plaintiff could be assessed a "strike" under 28 U.S.C. § 1915(g). If a prisoner accumulates three "strikes" because three federal cases or appeals have been dismissed as frivolous or malicious, or for failure to state a claim, the prisoner may not file suit in federal court without pre-paying the filing fee unless he is in imminent danger of serious physical injury. *Id.* If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* in this Court. *See* Fed. R. App. P. 24(a)(1).

Plaintiff need not bring a motion to reconsider this Court's ruling to preserve his appellate rights. However, if Plaintiff wishes the Court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). Any Rule 59(e) motion must be filed within 28 days of the entry of this judgment. *See* Fed. R. Civ. P. 59(e). The time to file a motion pursuant to Rule 59(e) cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon. *See* Fed. R. App. P. 4(a)(4)(A)(iv). A Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. *See* Fed. R. Civ. P. 60(c)(1). The time to file a Rule 60(b) motion cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(4)(A)(vi).

_____
Honorable Marvin E. Aspen
United States District Judge

Date:   May 19, 2022

14